## MULLINS *v.* TAYLOR.

In Banc., July 2, 1923.
[97 South. 5. No. 22794.]

EQUITY. *Will not aid employer, breaching contract to discharge employee who was without fault.*

Where a plantation owner employed a person for a year to man.
age a plantation, and breaches the contract without fault of
the employee, and undertakes to discharge him, and seeks
the aid of equity by injunction to make her act effective, equity
will refuse aid on the principle of the maxim, "He who comes
into equity must come with clean hands."

APPEAL from chancery court of Humphreys county.
HON. E. N. THOMAS, Chancellor.

Suit by Mrs. W. S. Mullins against E. C. Taylor. From a decree for defendant, plaintiff appeals. Affirmed.

*Mortimer & Sykes,* for appellant.

This case involves a question of far-reaching importance, and one vital to any agricultural country, and especially to our Delta country where nearly all of the plantations have managers on them; which is, *can any employer or master terminate the agency or discharge his servant at will, or can the servant or agent force his master or principal to retain him in his employ against his (the master's or principal's) will?*

Our position is that the principal can revoke the agency at any time he desires, and the master can discharge his servant at any time he desires, *with or without cause.* If he discharges him with cause, he does so without liability,

but if he discharges him without cause, he is liable to the agent or servant for the damages sustained by the latter by virtue thereof. See 21 R. C. L., section 8, page 823.

There is a distinction in law between the master's and principal's *power* to discharge the servant, or revoke the agency, and his *right* to do so. 31 Cyc., par. 2, page 1300, citing authorities; 26 Cyc., page 972; 18 R. C. L., sec. 21, page 510, citing *Derosia* v. *Ferland* (Vt.) ; 28 L. R. A. (N. S.) 577.

If, therefore, Mrs. Mullins, under the contract, could not force Taylor to stay in *her* employ against *his* will, then certainly Taylor could not, under the contract, force Mrs. Mullins to retain *him* in her employ against *her* will. *Adair* v. *United States,* 208 U. S. 161, at pages 174 and 175; 52 L. Ed. 436, 442, and 443; *Re Opinion of Justices* (Mass.) ; L. R. A. 1917 B., 1119; *Sims* v. *Lumber Company,* 51 So. 460.

When the motion to dissolve the injunction came on for hearing before the court, the court saw fit not only to decide that issue, but also decided the case on its merits, which we contend was error, because, in the first place, the learned Chancellor had no right to try the case on its merits at a hearing on a motion to dissolve the injunction, and, in the second place, he had no right to allow Taylor, at that time, his salary for November and December, because Mrs. Mullins was entitled to have his damages in that particular, diminished by any sums which he might make during those two months, and his damage in that regard could not have been determined until some time subsequent to December 31st. *Carley* v. *Reeves,* 107 Miss. 67, 64 So. 964; *Birdsong* v. *Ellis,* 62 Miss. 418; *Hunt* v. *Crayne,* 33 Miss. 669; *Ricard* v. *Margin,* 27 Miss. 305; 105 U. S. 1117; 178 U. S. 953; *Railway Company* v. *Echols,* 54 Miss. 264.

*Mortimer & Sykes,* for appellant, in response to questions propounded by the court.

The court desires additional briefs in this case addressed to the following propositions:

1. Assuming that the appellant discharged the appellee without just cause, thereby wrongfully terminating the contract, has equity power to aid her in getting the possession of the property and enjoining the defendant from further carrying out the contract?

2. Is the contract in the present case a contract for personal services within the meaning of that term?

3. Does the contract giving the defendant the right to work the two-mule crop upon the premises give him an interest within the meaning of the rule that a principal cannot discharge an agent where the agent's contract is coupled with an interest?

In answer to the first question asked by the court, the authorities are all agreed that a principal has the power to revoke the agency, save in exceptional cases, one of them being where the power is coupled with an interest, which is covered hereinafter below. Whether or not he has the right depends on the facts of the case, and if the revocation is wrongful, he is answerable in damages to the agent. Therefore, appellant had the power to terminate the agency. She did terminate it, and, consequently, the agency was ended. Thereafter, the agent was without further authority to act for her, and had he attempted to contract any liability, or otherwise for which she would have been responsible during the existence of the agency, she would not, after the revocation, have been liable. The agency was a thing past and gone. It was ended, and the agent was shorn of his power and authority.

This was not an action brought to terminate the agency, for that was not necessary. The agency was terminable at will and had been terminated. It was an action brought by this appellant to get the immediate possession of her premises, something to which she held the legal title and to which she was entitled. The appellee, after the revocation of his agency, refused to yield her the possession of her own property. He then and there became a trespasser and an active trespasser, at that.

In conclusion on this point, we reiterate that the agency had been terminated. This was an action concerning the possession of her property. In her bill she recognized that if the court should hold that the agent was wrongfully discharged, he was entitled to damages, and in her bill she offered to do equity and pay him whatever damage the court said he had sustained. This was the utmost she, or anyone else, could do.

In order to answer questions two and three of the court, it is necessary to know thoroughly just exactly what is meant by a power coupled with an interest. The leading case on this subject is *Hunt* v. *Rousmanier,* 8 Wheat. 204, 5 L. Ed. 597. The case of *McKellops* v. *Dewitz* (Okla.), 52 L. R. A. (N. S.) 255, sets out the decision in that case on this subject practically in full and is also a splendid case with reference to this question.

As to this character of agency, the rule is announced by Mr. Mechem in his work on Agency, section 204, 31 Cyc., pages 1294 and 1301, both inclusive; 21 R. C. L., sec. 62, page 889; *Todd* v. *Superior Court* (Cal.), 7 A. L. R. 938 and note; 21 R. C. L., page 824, sec. 8.

The prayer of the bill was for "a mandatory injunction to restrain defendant from further interfering in the management or control of the said plantation, commissary, commissary books, labor, and personal property, and that he remove from the *residence* thereon within thirty days." The injunction writ was as follows:

"Now, therefore, you are hereby commanded and enjoined until further order of this court, from further interfering in the *management and control* of the premises described in the said original bill . . . commissary, commissary books, labor, and personal property on said plantation, and that you remove therefrom in thirty days from the residence on said plantation."

Therefore, it is patent that everything he was enjoined from doing was interfering in the management and control of said place.

*Everett & Forman* and *N. W. Sumrall,* for appellee.

This case should be affirmed on two theories. First, that a written contract for a specified period, to-wit: the year 1921, had been entered into between the parties and could not thereafter be ignord or terminated without just cause before the expiration of the contract; and, second, the parties occupied the relation of landlord and tenant, and the tenancy could not be determined without two months' written notice, as provided by section 2882, Code of 1906; Sec. 2380, Hemingway's Code. As to the first proposition, we submit that the mere idea of appellant that the crop for 1921 was not what it should be was no ground for the cancellation of the contract of employment with appellee. We recognize the principle that, where a contract is entered into for a specified time, either party may cancel the same where the circumstances justify it, as where the employee was constantly under the influence of intoxicating liquors, as laid down in *Willis* v. *Lowrey,* 101 Miss. 118, or where the employer has certain fixed rules with reference to the conduct of his business, and the employee will not abide by such rules, as is laid down in *Cauley* v. *Rivers,* 107 Miss. 67. In this case, however, there are no broken rules; there is no misconduct calling for the discharge of Taylor; and the record discloses nothing on which Mrs. Mullins could base her idea of dissatisfaction. Under the contract above set out, Taylor had the exclusive management of the place for the year 1921, and could not, without just cause, be removed from the place until the expiration of this term.

As to the second proposition, we submit that in addition to Taylor being the manager under a contract, he was a tenant, and occupied the same relation to his landlord, by the specific terms of the contract of employment, as did any other tenant on the place; that is a tenant for the year 1921. *Schlicht* v. *Callicott,* 76 Miss. 487; *Alexander* v. *Postal Zeigler,* 84 Miss. 560.

*Everett & Forman,* for appellee, in response to the questions propounded by the court.

We say, in answer to this first question, that equity has no power to aid in obtaining possession by injunctive relief for three reasons: (a) The right of possession is a question of fact for a jury and the defendant cannot be deprived of that constitutional right by an injunction from the chancery court. *Black* v. *Jackson,* 177 U. S. 349, 44 L. Ed. 801; *Potts* v. *Hallen,* 177 U. S. 365, 44 L. Ed. 808. (b) The complainant had a complete remedy at law either by ejectment or the summary proceedings under the statutes on landlord and tenant. (c) Because there is no dispute in this record as to the fact that Mrs. Mullins and Mr. Taylor occupied the relation of landlord and tenant.

"A contract between two parties by which one is to furnish the land, etc., and the other labor to work the crop on shares, paying one-half of the crop for the use of the land, creates the relation of landlord and tenant between the parties." *Schlicht* v. *Callicott,* 76 Miss. 487; *Alexander* v. *Zeigler,* 84 Miss. 560.

The relation of landlord and tenant existing between the complainant and the defendant, Mrs. Mullins, could not evoke the chancery jurisdiction by injunctive relief to put Taylor out of possession of the property. "The usual common-law remedy for the recovery of possession by landlord, after the expiration of the tenant's term, is a writ of inquiry or the action of ejectment; *a suit in equity will not lie* for this purpose and by the weight of authority the fact that there exists between the parties to the suit the relation of landlord and tenant affords no ground for equitable relief by injunction where the effect will be to transfer the premises from one party to the other. So a court of equity will not, by preliminary injunction, deprive a tenant in possession, of the right secured to him by statute, of a notice to quit, as a condition precedent to proceedings to oust him from the possession. Neither will it interfere in behalf of the owner of land against a person claiming as tenant under a lease with the owner's agent, whose authority the owner denies." 16

R. C. L., 1181; *Lacassagne* v. *Chapins,* 144 U. S. 119; *Yellow Pine Company* v. *Southland Insurance Company,* 141 Ala. 664; *Beacham* v. *Wrightsville,* 125 Ga. 362; *Miles et al.* v. *Fink,* 119 Miss. 147; *Russell et al.* v. *Town of Hickory,* 116 Miss. 46; *Arnold* v. *Bright,* 41 Mich. 207; *Farmers Railroad Co.* v. *Reno,* 53 Pa. 224; *Hall* v. *Henninger,* 145 Ia. 230; *Hubbard* v. *Mobray,* 20 Md. 165; *Bodwell* v. *Crawford,* 26 Kan. 292; *Doige v. Bruce,* 141 Ia. 210.

As to the second question propounded by the court, it is our conclusion from a careful reading of the contract between the parties to this suit, that it is not a contract for personal services, as is usually and ordinarily understood by the meaning of the term "personal services," but is a contract by which certain personal services are to be rendered, and, in addition thereto, certain contractual rights are entered into between the parties so as to create the relation of landlord and tenant. That being true, Mrs Mullins could not terminate the contract at will, as she could if the relation of landlord and tenant did not exist between them. There is a vast difference between the contractual relations with landlord and tenant, and principal and agent. 31 Cyc. 1295; *Grapel* v. *Hodges,* 112 N. Y. 419; *Morgan* v. *Gibson,* 42 Mo. App. 234; 21 R. C. L. 887. Therefore we say that under this particular contract for the working of the plantation to be paid a wage, and also a contract creating the status of landlord and tenant, that it is not a contract for personal services which could be dispensed with at the whims or caprice of the landlord.

It is our judgment as to the third question, that a contract with reference to personal services or with reference to a landlord and tenant, can be one coupled with an interest in personal property as well as in real property. The cases cited by counsel all refer to contracts with reference to real estate, where the agents were given authority to sell and to have certain interests in the property after certain sales were made, and which authorities hold that the interest must be such that the agent can

convey without further authority from the principal, and also such that he can convey even after the death of the principal. We have no complaint to find of the authorites cited by counsel, because they are based on a different theory from the case at bar. In the present case, the contract provides that he shall have the privilege of working a two-mule crop on share on the land belonging to Mrs. Mullins, and the undisputed facts show that he did work this crop and was, therefore, under the Mississippi decisions, a tenant of Mrs. Mullins. Taylor could have conveyed at any time he saw fit after this two-mule crop was started, all of his rights, titles, and interests therein to any person without the consent of Mrs. Mullins, and he could have made such conveyance after the death of Mrs. Mullins. She had no control whatever over the disposition that he would make of this two-mule crop; all that she was interested in was in receiving one-half of the proceeds as her rent for the use of the land. Therefore, we say that under the circumstances, the contract is one coupled with an interest. Counsel seeks to come within the jurisdiction of the chancery court by stating in the brief that if they had used the ordinary methods of regaining possession of the property, the crop would have been ruined. He states at page 2 of his brief that the complainant did not bring her suit to terminate the agency; she brought it to get immediate possession of the property. He says that the action of ejectment or unlawful entry and detainer were too long drawn out for her to fool with. However, all of the authorities above cited bear out the contention that Mrs. Mullins must either resort to her remedy under the statutes of landlord and tenant to get possession of her property, or an ejectment suit, and that the chancery court has no jurisdiction by injunction or otherwise to give her possession of the property.

Argued orally by *J. A. Sykes* for appellant and *F. E. Everett* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellant and the appellee, on the 18th day of December, 1920, entered into the following contract:

"In consideration of a salary of fifteen hundred and no/100 dollars ($1,500) and the privilege of working two-mule crop on shares, I hereby agree to work the plantation of Mrs. W. S. Mullins on Bear creek and to keep to the best of my ability enough labor to cultivate all open land; it being understood that I am not to take the choicest parts of said place for both of my hands, but will try to divide my two wage crops evenly. This I agree to do to the best of my ability."

On the 3d day of October, 1921, appellant filed her bill in the chancery court, alleging that she was the owner of nine hundred and eight acres of land situated in Humphreys and Leflore counties, which was purchased by her husband in his lifetime in the year 1919, paying at the time of purchase one-half of the purchase money in cash and the balance on partial payments secured by deed of trust; that her husband died in 1920, and since his death she has had charge of the plantation and owned it, but was a resident of Macon, in Noxubee county, where she had a hardware business, and that it was necessary for her to employ a manager for the said plantation; that in the month of December, 1921, she entered into the contract above set out, alleging that the defendant was to give all of his time to the business and management of the place, and give faithful performance of the duty as manager, and that his duty was to procure a sufficient amount of labor to properly cultivate the land and occupy all the houses on the land, and that he was to keep the labor on the place during the year 1921 and to have the place properly cultivated, for which he was to receive on thousand, five hundred dollars, payable one hundred and twenty-five dollars per month, beginning January 1, 1921, and ending January 1, 1922, and in addition thereto was to work on shares with the complainant in the cause a two-mule crop, this being understood to be a part of the consideration coming to him as manager, the complainant

furnishing the mules and treating him as other share croppers; that the land to be worked on shares was to be selected by the defendant, and that it was the duty of the defendant as manager to run the commissary and keep the books of the farm; that the commissary was a small store-house on the plantation; that in pursuance of this contract the defendant resides in the residence on the place, and undertook the management of the farm and the running of the commissary on the 1st of January, 1921.

She charges in the very outset that the defendant failed to perform his contract; that he did not secure labor to fill all of the houses, and for this reason some of the land was not cultivated; that at the very outset he showed incapacity to handle labor, and that the labor on the farm were about to leave, and that complainant had to come down from Macon to keep the labor on the farm; that defendant did not use ordinary intelligence in securing labor, and that this resulted in a small crop. She further alleged that the defendant was not keeping the books satisfactorily, and that she was put to the expense of having this work done by others; that defendant called her more than once to come from Macon to said plantation to help in the management and performance of his ordinary duties; that he did not give the making of the crop proper attention; that no one worked on the place except share croppers, and there was no need to pay extra money for laborers to assist in the crops, but that the defendant did employ such additional labor for said purpose, and that he refused to carry out her instructions, and that he disturbed the labor on the place; that the reason for this failure and lack of interest in the management of the plantation was his antagonism to her and her interests; that on the 1st day of August, 1921, she notified the defendant that she desired to take possession of said farm on the 1st of October; that she would allow him to remain in the house with his family until the 1st of November, but that she would place a new manager of the place on the 1st of October; that she again notified him in September

that she would expect him to surrender the management of the place to the new manager on the 1st of October, but that he and his family could remain in the residence until the 1st of November, at which time she would expect him to remove from the farm; that on the 1st of October she went to the farm, and she had employed a new manager for the place, and told the defendant to surrender the management, and he refused to do so; that in violation of his instructions he sold certain cotton seed belonging to the place, and that he failed to make proper charges to tenants for goods furnished by her; that on the 1st of October she desired to inspect the books and asked the defendant for her keys to the store; that he refused to allow her to have anything to do with the store, and that the books were in the store, and that she could not get access to the books, unless she could get in the store; that the crops were now being gathered, but had not been gathered as rapidly as should have been done; that the rainy season may set in at any time and the cotton be damaged; that by reason of the fact that a number of trust deeds were standing on the farm, and partial payments amounting to eleven thousand dollars would be due before the end of the year, and that interest on loans and the taxes would be due, it is imperatively necessary for the crops to be rapidly gathered; that it is necessary for the crops to be gathered rapidly, and necessary for the new contracts to be made for the ensuing year, especially with reference to labor, and in order to secure such new contracts it is necessary to settle promptly with the labor; that up to this time she had performed her part of the contract, and paid the defendant one hundred and twenty-five dollars per month, except for the month of September, which she is ready to pay; that if, in the judgment of the court, she is due the defendant any further sums, she stands ready and willing to abide by the order of the court, and prays for an injunction against the defendant for restraining him from further interfering with the management and control of the prem-

ises, the commissary, commissary books, labor, and personal property on said plantation, and that he remove within thirty days from the residence, and that on final hearing the injunction be made perpetual, and that the court will decree that the complainant receive from the defendant as damages whatever sum or sums the court may deem just and proper, and that whatever equities may exist between said parties to be fully and finally adjudicated and adjudged, and prays for general relief.

The injunction was granted as prayed for, and the defendant filed an answer denying all the allegations of the bill with reference to defaults upon his part in carrying out the provisions of the contract. It admits that he was to receive one thousand five hundred dollars per year, and to work a two-mule crop on shares with the complainant, and denies that the contract provided that he was to procure sufficient labor to occupy all the houses on the plantation, or that the contract provided he was to keep labor on the place during the year 1921; alleges that he worked a one-mule crop on shares, and that he resided with his family upon the land described, and that he had lived on the plantation for three years prior to 1921, managing the said plantation during the years 1918, 1919, and 1920, and says that he had sufficient labor on the place to work the entire plantation, and that he could have kept the labor on the place, but for the intermeddling of the complainant with the labor, and because she would not furnish the tenants with proper and sufficient supplies that some of the labor left the plantation during the year. It denies substantially the allegations of lack of due care and skill in the management of the business, and substantially all of the grounds upon which the bill seeks to annul the contract and regain possession of the place, and filed a motion to dissolve the injunction and an itemized account of damages for the wrongful suing out of the injunction.

A motion to dissolve the injunction was heard on the 31st day of October, and a decree rendered on the 1st

day of November, 1921. Said decree dissolving the injunction, and allowing damages for the wrongful suing out, and decreeing that the defendant was entitled to receive the remainder of the one thousand five hundred dollars and was entitled to a one-half interest in the one-mule crop, and to remain on the premises and in the dwelling house now occupied by him for a reasonable time to complete the gathering of the crop, which reasonable time is fixed at fifteen days from this date. And from this decree this appeal is prosecuted.

The testimony offered by the parties on the allegations of the bill and the issues made by the answer was conflicting; the testimony of the complainant tending to establish the allegations of the bill, while that of the defendant tended to show the allegations of the bill not true, a number of the neighbors testifying that the defendant had managed the place and made as good crops as could be expected under the circumstances, and that he had discharged the duties of manager during said year. It was shown in evidence for the defendant that he had managed the place for four years, and that he was a competent and prudent manager. The defendant also introduced a letter written to him by the complainant, bearing date of the 8th day of August, 1921, expressing "the belief in you that I have held during this year that you are doing your best for me," also referring to the nice crop and expressing the hope that it would hold its own during the month, and, if so, "I think we will be safe."

The evidence in the record warrants the finding of the chancellor that the defendant had performed his part of the contract, and that the complainant did not have reasonable grounds or legal grounds for breaching the contract and discharging the defendant as manager of the place. Assuming that she had the power to discharge subject to liability for damages for so doing at law, we think that she is not entitled to maintain an injunction in this case, because she does not come into equity with clean hands; that is to say, equity will not lend her aid

in regaining possession and control of the premises, where the dissolution of the contract is due to her own fault. The maxim, that "he who comes into equity must come with clean hands," is one of general application, and equity will not lend its aid in securing to the litigant rights, where the litigant complainant has not performed or discharged the duties required by law, but will leave the litigant as it finds her. The subject is fully treated in 4 A. L. R. on pages 1 to 44, in the series of cases and in the case note on the general subject from page 44 to page 107, where the rule and all its limitations and qualifications are fully discussed; and in the case note, pages 70 to 79, the rule with its application affecting contract is dealt with, and we think the principles deduced from these cases fully support the chancellor's holding in the case. Consequently the judgment of the court below is affirmed.

*Affirmed.*